(Court of Common Pleas, Huron Co.)

U. S. ZERKLE v. W. H. PRICE.

---

(1.) While a guaranty of the performance of a contract void for illegality or immorality, or because contrary to public policy, will not be enforced against the guarantors, guaranty of the performance of a merely voidable contract, valid at the election of its makers, is enforcible against the guarantors.

(2.) Where a contract, not illegal, immoral, or contrary to public policy, is entered into by a corporation through its officers and directors, a written guaranty that such corporation will perform its promises under the contract, is valid and enforcible, although the contract of the corporation may be voidable at the election of its stockholders as ultra vires.

(3.) A subscriber to the stock of a corporation under a stipulation that at his option and after a certain period, the money paid on such subscription will be repaid, may recover the amount of such payment, from officers and stockholders of the corporation who personally guaranty the performance of said stipulation on the part of the corporation.

(4.) In an action against the guarantors, the original promisor is not a necessary party.

---

WILDMAN J.

The case of U. S. Zerkle against W. H. Price was submitted to me on a demurrer to the plaintiff's petition against the C. H. Whitney Nursery Company. The petition is somewhat a novel one.

It is not long, and I will read the material parts of it:—

"On the 21st day of August, 1894, the C. H. Whitney Nursery Company was a corporation under the laws of Ohio, with its office and place of business in the city of Norwalk, O., and with C. H. Whitney as president and Frank Sawyer as secretary thereof, with the defendants W. H. Price and C. H. Stewart and others, as its legally acting directors, and with the said C. H. Whitney, Frank Sawyer, W. H. Price and C. H. Stewart and others as stockholders therein.

"For the purpose of securing the plaintiff's subscription to its capital stock in the sum of $1000, and for the purpose of securing the payment of the sum of $1000 by the plaintiff therefor, the said corporation, by its said officers, and by its said directors W. H. Price and C. H. Stewart and other directors thereof, duly entered into its written contract of that date, August 21, 1894, with the plaintiff, as hereinafter set forth.

"At the same time and as a part of the same transaction, and for the same consideration of said payment of said sum of $1000 by the plaintiff to said corporation, the said defendants W. H. Price and C. H. Stewart, duly executed a written agreement at the foot of said written contract and on the same paper therewith, whereby they guaranteed that the said corporation would perform its part of the said contract.

"Following is a true copy of said contract and guaranty, and is made a part hereof:—

"Norwalk, O. Aug. 21, 1894.

"'Articles of agreement entered into this day by and between the C. H. Whitney Nursery Co., and U. S. Zerkle, of Norwalk, O., Witnesseth, that the said Zerkle has this day subscribed to the capital stock of the C. H. Whitney Nur-

sery Co. in the sum of one thousand dollars, and for their part the C. H. Whitney Nursery Company in consideration in part for such subscription agree to furnish said U. S. Zerkle employment and to pay him for his labor the sum of ten dollars per week, each week, for the first year, and twelve dollars per week, each week, for two years after the first year, and it is further agreed that the employment shall begin upon the payment of the $1000 for the stock subscribed for; and the said company further agree that at the expiration of three years, if the said Zerkle wishes to withdraw from the company, that they will return to him his $1000, provided said Zerkle give them ninety days notice in writing of his intention to withdraw and surrender his certificate of stock.

"The C. H. Whitney Nursery Co.
"per C. H. Whitney          "Pres."
"and Frank Sawyer.          "Secy."
"U. S. Zerkle.

"'We hereby guarantee that the C. H. Whitney Nursery Co. will fulfill their part of the above contract.

"C. H. Stewart,
"W. H. Price.'"

The petition then goes on to say that, "The plaintiff was not a stockholder of said corporation, nor had he subscribed to the capital stock thereof, nor was he in any manner financially interested therein, at the time of the execution and delivery to him of the said contract and guaranty.

"The execution and delivery of the said written contract and guaranty of the defendants thereunder, by the said corporation and by the defendants W. H. Price and C. H. Stewart, were demanded by the plaintiff and accepted by him in good faith as the condition to be performed by the said corporation and persons so acting and by the said W. H. Price and C. H. Stewart, and relying thereon and in consideration thereof the plaintiff, after the execution and delivery to him of said contract and guaranty, subscribed to its capital stock in the sum of $1000, and on the 22nd day of September, 1894, in payment thereof, he duly executed and delivered to said corporation his certain promissory notes for the payment of $1000, with interest thereon at seven per cent. per annum secured by mortgage on plaintiff's homestead, consisting of a house and lot in Norwalk, O., which notes were immediately sold by said corporation and the proceeds thereof applied by said corporation to its uses."

The plaintiff says, "On June 22nd, 1897," (which would be a little prior to the expiration of three years from the date of the contract,) "he duly notified said corporation, the said C. H. Whitney, its last president, Frank Sawyer, its last secretary and treasurer, C. H. Whitney, said W. H. Price, said C. H. Stewart, F.

M. Chaffee, Frank Sawyer, A. Haslock, J. D. Whitney and L. H. Smith, its last stockholders and directors, by delivering to them and each of them, at their several places of business, and by delivering to said W. H. Price in person, written notice of plaintiff's intention and desire to withdraw from said company and receive back therefrom the said sum of $1000, in ninety days from said notice and at the expiration of three years from the payment thereof to said corporation, and of his intention to surrender his said certificate of stock to said corporation.

"At the date of said notice the plaintiff was, and at all times since the date thereof he has been, and he still is ready and willing to surrender said certificate of stock to said corporation, or to the defendants, upon payment by it, or them, to him of said sum of $1000 in accordance with said contract and guaranty.

"The plaintiff says that the said corporation did not pay or return to him the said sum of $1000 in ninety days from said notice, or at the expiration of three years from payment thereof by the plaintiff to said corporation as it agreed to do by its said contract, nor has it since paid or returned to him said sum or any part there, of which the defendants W. H. Price and C. H. Stewart, on the 24th day of September, 1897, had due notice, but no part of said sum has been paid."

It will be noted that the Nursery Company and C. H. Stewart are not sued. The action is brought against W. H. Price alone.

To this petition a demurrer is interposed which, as presented and argued, raises two questions; first, that the court has no jurisdiction of the subject of the action; second, the petition does not state facts sufficient to constitute a cause of action.

Counsel for defendant has asked leave to file an amendment to this demurrer, raising the additional ground of defect of parties defendant, in two respects: first, that there is a defect in said petition of parties defendant in that the C. H. Whitney Nursery Company is not made a party defendant thereto, and secondly that there is a defect in said petition of parties defendant in that C. H. Stewart is not made a party defendant thereto.

The first case upon which I care to make any special comment is the case reported in the 16th Ohio Reports at page 1, the case of Leonard v. Sweetzer, the syllabus of which is: "A guaranty of the fulfillment of a contract, written below the contract, and executed at the same time, subjects the guarantor as an original contractor, and a suit may be sustained against both parties jointly, or against either severally".

There is another case in the 12th of the Ohio Reports at page 158, which has been cited by counsel and which bears upon this same question, and the case of Jus-

[COPYRIGHT, 1898, BY CARL G. JAHN.]

tus Gales, Administratrix, v. Van Arman and Hopkins, in the 18th of the Ohio Reports, 336, is in the same line.

I think that a careful examination of these three cases will lead to the conclusion that whether or not the supreme court was right in holding that a contract of guaranty executed at the same time with the original contract, became itself a part of the original contract so that guarantors stand upon it as if they had signed the contract itself as sureties, still these decisions have settled the question for Ohio, that a guarantor may be sued separately or jointly with the original contracting party or obligor.

These three cases are reviewed in the case of George S. Deming v. The Board of Trustees of the Ohio Agricultural and Mechanical College in the 31 Ohio State Reports, beginning on page 41. I invite the attention of counsel especially to the language of the court on pages 51 and 52. This was a case in which a certain guaranty had been made of a contract, of which guaranty the original contracting parties were not apprised. They had no knowledge of it and did not consent to it. The claim was made by counsel upon the basis of these earlier cases in the 12th, 16th and 18th, Ohio Reports, that a guaranty being a part of the original contract and being made without the consent of the other contracting parties, was an alteration thereof, and that it would thereby invalidate the original contract. The supreme court, passing upon this question in the case I have just cited from the 31 Ohio State Reports hold that it is not a part of the original contract in such a sense as that, but they did not disturb the conclusion that was arrived at or the rule made in the earlier cases, —that the parties might be sued jointly or separately. From a careful examination of these authorities, as well as upon principle, I am satisfied that it is not necessary to join the original contractor (in this case the Nursery Company), as a party defendant in suing the guarantor, and this would dispose of the question raised by the amendment to the demurrer, so far as it touches the failure to bring in the Nursery Company as a co-defendant with W. H. Price. It does not, however, dispose of the other question as to whether C. H. Stewart should be joined. That question, however, I will not pass upon at this time, since counsel will wish to present their views upon it. I will suggest to counsel for the plaintiff that the form of guaranty as between Price and Stewart is not joint and several, but the language is, "we hereby guarantee", and it is signed "C. H. Stewart, W. H. Price". This form, I take it, would be what we would ordinarily deem a joint obligation. The question is fairly raised as to whether Stewart should not be made a party.

Section 5054 of the Revised Statutes

and the case found on page 11, of the 42 Ohio State Reports,—the case of Yoho v. McGovern, may be examined, and in connection with this, a case in 33 Howard's Practice Reports, at page 80, which I think has a bearing.

I am quite clear in my mind that this defect, if it be a defect, would have been waived by the filing of a general demurrer, but I am disposed to allow counsel leave to amend. There are many matters which would be waived by not raising question in pleading, but the manner having been called to the attention of the court by counsel, by asking leave to amend their demurrer, I think they should have an opportunity to raise the question fairly upon the record.

A far more serious question is raised, however, as to whether the petition states a cause of action against any of these parties. I feel quite clear under the decision in the 31 Ohio State Reports to which I have already called attention,— the case of Deming v. The Board of Trustees, etc.—that the contract of Mr. Price and Mr. Stewart was not a part of the contract of the Whitney Nursery Company in any such sense as to make these guarantors joint obligors with the Nursery Company, The language of the decision is expressly, that "the guaranty of the payment of the debt of another, made at the time the debt is contracted, does not constitute the guarantor and the principal debtor, joint promisors."

This is like a guarantee of payment; it is not a guaranty of the enforcibility of a contract; it is a guaranty that the Nursery Company will fulfill, precisely as if the guaranty had been that the Nursery Company would pay one thousand dollars, if the contract had been simply for payment, not for the doing of any other acts.

The claim is, however, made in behalf of the defendant, that this entire contract on the part of the Nursery Company is invalid; that it cannot stand alone, and that the guaranty must fall with it. It is argued that the contract is contrary to public policy. It is not urged that it is in violation of any express provision of law. It is not urged that it is immoral in any sense other than that the tendency of such a contract is to work fraud upon the stockholders and creditors. I will say in passing, that if this original contract is immoral or illegal for any reason, if it is void, as contrary to public policy, affecting the people generally, then it should not be enforced as against either the principal contractor, or the guarantor. If the contract is void for illegality or immorality, the guaranty must fall with it, because the court will not enforce a guaranty to perform a contract which ought not to be enforced against any one,—a contract which it would be improper to perform.

Now, is this original contract of that

nature? Is the contract void or only voidable at somebody's election? If it is void, there is nothing to fulfill. If it is good as against the company, but voidable only at the election of creditors whose security is to be reduced by the cancellation of stock, a question might arise upon a pleading by such creditors which is hardly raised in this case.

There is no answer here, so we are driven to the petition to ascertain what are the assumed facts, and the demurrer admits all the material averments of the petition to be true.

It does not appear by any pleading here that the corporation is insolvent · that it has any creditors; that it had any creditors at the time of making this contract, or at the expiration of three years, the time when the cancellation of the stock and the return of the one thousand dollars was sought. The defendant here, who raises the question, is not a creditor, and it does not appear that any creditors, if there are any, are complaining of any contemplated reduction of the stock of the company.

The part of the contract that is here sought to be enforced is the return to the plaintiff of one thousand dollars. The promise is that the company will return to him his one thousand dollars provided said Zerkle gives them ninety days notice in writing of his intention to withdraw and surrender his certificate of stock. There is no express promise on the part of the company that they will cancel the stock. It is highly probable that at the time of making this contract Mr. Zerkle was not at all solicitous about having the stock canceled, but the thought which was uppermost in his mind was that he wished to retain the option of getting his money back at the expiration of three years if he should conclude that it was not a profitable investment. I think, however, that by a fair intendment, the company are to be held to a cancellation of the stock, if they are held to any part of the contract; that is, if they are to be held to a return of the money. It could hardly have the construction that they are to return to him his one thousand dollars, treating its delivery to the company as a loan, and still regard him as one of the existing stockholdesr of the company with an unpaid subscription. But what he sues for here is not for the cancellation of his stock; the prayer of the petition is simply for judgment against the defendant for one thousand dollars, together with interest thereon from September 24, 1897.

As I have alraedy stated, the question as to what would be the rights of the creditors is not directly raised by the pleading here, because it is not alleged that there are any creditors, or that any creditors are objecting. That the company may make a valid promise to pay money for any legitimate purpose, there

can be no question; that the company may even, by proper procedure, either reduce or increase its stock, cannot be questioned. The statutes make provision for such a thing as that, and our courts have held that even where not expressly provided for by statute, the stock of a company may be reduced in such a way that creditors cannot complain.

It is to be remembered that even if this contract is to be construed as a promise by the company not only to pay him his one thousand dollars, but also to release him as a stockholder, whether or not such a promise would be enforcible against the promising company. It would be in the power of the company to perform it voluntarily, if the stockholders consented to such performance, provided no fraud on creditors was intended or worked. I think there can be no question as to that proposition. If that be so, it is equivalent to the statement that the contract is voidable, not void,—voidable at the election of the stockholders provided no frauds are contemplated or worked.

The petition alleges here, not that the directors of this Nursery Company made this contract, but that the corporation entered into it by its directors and other officers. The question is not raised here as to whether the directors were authorized to execute this contract by the company. It is not a question of the power of the officers to bind the company; but the question raised by counsel for defendant is as to the power of the company itself to enter into such a contract. The demurrer admtis so much of this allegation on the petition as is allegation of fact, and when the petition says that the company duly entered into the contract, I think that the admission must be construed, not necessarily that the company had a legal right to ente into the contract, but that, if the company could enter into such a contract, these officers who assumed to act for the company, were duly authorizd; that every preliminary to the action of the directors must be assumed by the demurrer to the petition which admits its truth to have been taken; so that if it required a vote of the stockholders to authorize the directors to enter into the contract, that must be assumed to have been done, the petition alleging that the corporation duly entered into the contract by its directors.

The admission alleges that the corporation entered into the contract, and if it could do this only with the knowledge and consent of its stockholders, that must be taken as implied in the pleading and conceded by the demurrer. I think this would dispose of any claim that the contract was or could be a fraud on the stockholders. I say this, because the question is raised and very ably urged in argument and in briefs that such a contract as this is not only a fraud upon the directors, but a fraud up-

on the stockholders of the company. I cannot conceive that that can be a fraud upon the stockholders which they authorize or to which they consent. But supposing that the contract is voidable at the election of the stockholders and non-enforcible against the company by any legal procedure, still the company might have seen fit to fulfill the promise. Now, that is what the guarantors promise that the company will do—that the company will fulfill that contract: that is, that the company will not avoid it, even if it can—that the stockholders, who are the company, will waive any claim of fraud against them, or any right of election to avoid or to rescind the contract.

The guaranty is not of the collectibility of the claim, as I have already stated; it is not of the power to perform; it is a guaranty of performance, of fulfillment. In this respect it has some analogy to the guaranty of an infant's promise, which promise may, so far as the infant is concerned, be either ratified or repudiated when the infant arrives at majority. It is like the guaranty of the promise of a married woman which is or was at one time non-enforcible against her. Upon this point, I will call attention to the language in the 5th edition of Parsons on Contracts, second volume, beginning at page 3: "In general, a guaranty is not negotiable, nor in any way transferable, so as to enable an action to be maintained upon it by any other person than him with whom the contract is made. It is a promise to pay the debt of another; but the guarantor may be held although no suit could be maintained upon the original debt, and such guaranty may have been required for the very reason that the original debt could not be enforced at law; as where the guarantor promises to be responsible for goods to be supplied to a married woman, or to be sold to an infant, not being necessaries. But where the original debt is not enforcible at law, the promise to be responsible for it is considered, for some purposes, as direct and not collateral; as, in fact, the original promise."

And this principle I think, not only establishes the fact that a guarantor may be liable upon a guaranty of non-enforcible original contract, but it also affects the other question to which reference was made a little while ago as to the right of sueing a guarantor without joining with him the principal obligor. If the principal obligor may not be bound; if the contract may be non-enforcible as against the Nursery Company, and still enforcible as against the guarantor, then manifestly they must be so far severally liable as that they may be sued severally. If the liability of the guarantor is not dependent, in other words,, upon the liability of the principal, then the guarantor may be sued alone.

Upon page 773 of the 24th Encyclopedia of Law, section 14, the text reads: "Where a person becomes a surety for a person who is incapable in law of contracting, as a person non compos mentis, an infant, or a married woman, he is bound, although the principal is not." Reference is made to note 2, under this same section which contains a large number of authorities in support of the text.

The principle is more directly applied in this same 24 Enccylopedia of Law to corporations, on page 478 in note 3, citing the case of "Remsen v. Graves, 41 N. Y., 471". The text reads: "A surety on a bond given by a corporation is estopped not only from denying the existence of the corporation, but also the corporate authority to make the bond."

The citation in note 3, from the 41 New York, has this language: "Where a cemetery association organized under the general act, executed to the defendent a bond for money loaned by him to them, which he subsequently assigned to the plaintiff, endorsing thereon a guaranty to the plaintiff of the payment thereof. The court held, in an action on the guaranty, that the defendant would not be permitted to set up that the association was not authorized to issue such bond, or that the same was not a binding or valid obligation when issued."

Another case cited is from 36 New Hampshire, 73: "The guarantors of a contract executed by a railroad company are estopped from denying that the president of the company had authority to sign the contract."

Another case from the 52 Pennsylvania State, 343, holds: "A teller of a bank who had authority to issue due-bills for the bank for a special purpose, issued them to raise money for himself. It was held that the sureties of the teller could not set up a want of power in the bank to issue the due-bills."

Other cases are cited from Indiana and Michigan in support of the proposition in the text which I have read.

A case is cited by counsel for the defendant, being that of the Board of Education of Hartford township v. Thompson et al., in the 33 Ohio State Reports, at page 321, which, while it has some similarity to the case at bar, does not contravene the principle to which I have referred. That case was one wherein a note was given for money unlawfully loaned to the township treasurer by the township, and the contract was held invalid and the sureties on his official bond were held not estopped from setting up the illegality of the transaction as a defense. The sureties also claimed to be ignorant of the criminal nature of the transaction. But the transaction was criminal and I think that element in it distinguishes it from the cases in the other states to which reference has been made.

If this were a contract void by reason

of crimnality, as I have already suggested, so that it not only was not enforcible against the corporation, but was absolutely void and ought not to be performed by the corporation, then an entirely different question would arise.

It appears by these papers not only that Mr. Price was a guarantor of this company, but that he was a stockholder and director in it. It is claimed by counsel that the contract is invalid by reason of its fraudulent tendency as against public policy, and that is the objection which is mainly argued,— that the contract ought not to be enforced because it is a contract by the corporation for the purchase of its own stock, and that there is a liability to defraud the stockholders by reason of such a contract.

If all the stockholders colluded in such a contract, retaining the privilege of having themselves released at any time from their liabilities as stockholders, I think unquestionably, creditors might attack such a transaction; but nothing of that kind appears here. There are two phases of the application of the principle of ultra vires: One which affects the public and the other which effects private persons only, and I think it may be laid down as a general proposition that wherever a contract is invalid by reason of its affecting private persons only, that these persons may make it valid by assenting to it, or entering into it. In other words. they may be estopped from disputing its validity.

Referring to the 27 Encyclopedia of Law, page 409, this principle is stated: "Participation by a shareholder in the transaction complained of, or acceptance by him of the benefits and fruits thereof, with full knowledge, will constitute a bar to his relief."

Counsel for defendant cite some language from Field on Corporations, on page 289, to this effect: "The books are full of cases upon the powers of corporations and the effect of dealing in a manner and for objects not intended in their charters."

They also cite sections 257 and 258: "The doctrine of ultra vires is so frequently referred to in connection with corporate contracts that a particular consideration of it seems to be here required. This doctrine, as applied at least to municipal corporations, is that they cannot be bound by any contract executed by any of their officers or agents. which is entirely beyond the scope of their powers, or entirely foreign to the purposes of their creation, or absolutely immoral or against public policy; that contracts thus made are absolutely void; and that no recovery can be had thereon, when the defense set up to the same is the want of power to so contract."

Especial emphasis was laid upon this language of Mr. Field,—"that contracts thus made are absolutely void." Coun-

sel for defendant discussed to some extent the question as to whether such a contract would be void or merely voidable; but I think the language of Mr. Field is to be taken in connection with that which immediately precedes it,— that it is treating of contracts which are entirely foreign to the purposes of their creation or absolutely immoral, or against public policy. And even then, my impression is that the language is to sweeping and that Mr. Field uses the word "void" when, as to part of these contracts, he would better have used the word "voidable'; that is, that in a case where a contract, for instance, is foreign to the purposes of the creation, if it is a contract which the stockholders all agree might be performed without defrauding anybody else, I think then that a guaranty will be enforcible although the contract would not. I refer counsel, however, to the language on page 289, in section 260 of Field on Corporations in which he quotes approvingly from the language used by the eminent jurist, Chief Justice Comstock, to this effect: "But is it true that all contracts for purposes not embraced in their charters are illegal, in the appropriate sense of the term? This proposition I must deny. Undoubtedly, such engagements may have vices, which sometimes infect the contracts of individuals. They may involve a malum in se, or a malum prohibitum, and may be void for any cause which would avoid the contract of a natural person. But where no such vices exist, and the only defect is one of power, the contract cannot be void because it is illegal or immoral. Such a doctrine may have some slight foundation in the earlier English railway cases, but it was never established, and is not now received in the English courts." The books are full of cases upon the powers of corporations and the effect of dealing in a manner and for objects not intended in their charters; but with the slight exception named, there is not only an entire asbence of adjudged cases, even of judicial opinions or dicta for the proposition that mere want of authority renders a contract illegal. Such a proposition seems to me absurd. The words "ultra vires", and "illegality" represented totally different and distinct ideas. It is true that a contract may have both these defects, but it may have one without the other. For example, a bank has no authority to engage, and usually does not engage, in benevolent enterprise. A subscription made by authority of the board of directors and under the corporate seal for the building of church or college or an alms-house, would be clearly ultra vires, but it would not be illegal. If every corporator should expressly assent to such an application of the funds, it would still be ultra vires, but no wrong would be committed and no public interest violat-

ed. So, a manufacturing corporation may purchase ground for a school house, or a place of worship for the intellectual, religious and moral improvement of its operatives. It may buy tracts and books of instruction for distribution among them. Such dealngs are outside of the charter; but so far from being illegal or wrong, they are, in themselves, benevolent and praiseworthy. So, a church corporation may deal in exchange. This, though ultra vires,, is not illegal, because dealing in exchange is not itself an unlawful act.''

I do not think that this contract was immoral or illegal. It may have been ultra vires and non-enforcible against the corporation, or stockholders who did not assent. It may have been a fraud upon non-assentipg stockholders. But Mr. Price participated in the transaction itself. He was a stockholder, he was a director, and he was a guarantor of the contract.

A case which has been cited and discussed to some extent in argument is the case of Coppin v. Greenlees & Ransom Company in the 38 Ohio State Reports at page 275, in which it is held that an executory contract by a company for the purchase of its own stock, is not enforcible against it. It does not go further than that, but in the dictum on page 280 referred to by counsel in argument, the court suggests that although an executory contract may not be enforcible, or is not enforcible by a company for the purchase of its own stock, made with an existing stockholder a contract of that nature which has been executed, may be enforced. It does not seem to me that this case contravenes the princ'ples which I have already suggested, as in my judgment applying to this contract and the relation of these parties to it.

The case of Morgan v. Lewis in the 46 Ohio State Reports, is one where the company did take back its own stock, releasing the subscriber from his obligation as a stockholder and returning to him the property which he had paid in pursuance of his subscription, and that transaction was upheld. Pertinent language will be found upon pages 8 and 9 of that decision. But the case does not touch the other position which I have taken, that a guarantor may be liable, although the company may not be, nor does it meet the question of estoppel to dispute the validity of the contract, and that is still another question that is practically presented here. The contract may be invalid, but Mr. Price may not be at liberty to assert its invalidity.

The inquiry was made by counsel whether the whole contract is not void, if it is in part void; that is to say, if the condition upon which the subscription is made is void so that plaintiff's money cannot be returned to him, the question

arises as to whether it does not vitiate the entire contract and subscription so that he is not a stockholder, and in that case his action might lie against the company, not upon the contract which he has made with the company because of its invalidity, but for money had and received, because they have had his money without his being a stock subscriber. I think the inqury is a pertinent one, and the same suggestion is made in the case of Vent et al. v. Duluth Coffee and Spice Company by the supreme court of Minnesota, 67 Northwestern Reporter, at page 70. In that case, the court make the suggestion that a conditional subscription may be void, invalid, and the party not be a stockholder; but that he may have the right to recover his money. I quote:

''The plaintiff purchased from the defendant corporation a number of shares of its capital stock, by an agreement which provided that at the end of a certain time he could, at his option, return the stock, and receive back the purchase price. In an action to recover such price, held, the agreement is in the nature of a conditional sale, with an option to the purchaser to revoke or rescind, and, as between the plaintiff and defendant, the rights of creditors not being involved, the agreement by the defendant to receive back the stock, and pay back the price thereof, is not ultra vires.''

Judge Canty rays in the latter part of his opinion: ''There is no express provision in its articles of incorporation authorizing defendant to buy or deal in its own stock, and whether an original, independent contract, by which it agreed to purchase its own stock, would be ultra vires, we need not consider. This is not such a care. This provision of the contract constituted a material and substantial part of the consideration and inducement for the purchase of the stock by plaintiffs, and, if the provision is void, it seems to us that it vitiates the whole contract, and is a sufficient reason for the rescission of that contract and the return of the purchase price, which purchase price plaintiffs are demanding. But the better opinion,, it seems to us, is that which holds the original contract to be a conditional sale, with the option to revoke or rescind in the purchaser. In Browne v. Plow Works, 64 N. W., 66, we held that a similar contract was not ultra vires. There is no question here as to the rights of creditors.''

My opinion is that this demurrer, as originally presented, should be overruled. As to the ground of the amendment, that the Nursery Company is not joined in the suit as a defendant, I think it should also be overruled. As to the ground that there is a defect of parties defendant in not uniting Mr. Stewart with Mr. Price upon their guaranty, the question may

be left open for counsel to present such argument as they deem fit.

Stewart & Rowley, for plaintiff.

L. C. Laylin and Jno. A. Williamson, for defendants.